Bell, J.
On the 19th day of November, 1903, the plaintiff in error, The G-rand Fraternity of the state of Pennsylvania, and the United Moderns of the state of Colorado, were fraternal benefit associations, having the- same general purposes and each occupying a different membership territory. Said associations agreed.and stipulated that a consolidation would extend and improve the field of each, making it practicable for the one organization to rapidly extend its transactions into all of the desirable states of the Union, under one management, saving expense, strengthening both associations and facilitating the re *482 ceiving of other orders preparing to unite with said consolidated order, for the purpose of forming one Grand Fraternity on a safe, sound, economical, and equitable basis. It was also agreed and stipulated, at the time that the supreme executive bodies of both orders had met, considered, authorized and directed that said two associations be consolidated, that the members of each order should, without payment of fees or further act, be recognized and accepted as members of the consolidated order; that the name of The Grand Fraternity should be retained and adopted by the consolidated organization; that said consolidated organization should operate under the charter of The Grand Fraternity, granted by the state of Pennsylvania; that the insurance or beneficiary contracts of each of the orders should remain intact, and be assumed by the consolidated order, according to the terms and conditions of- said contracts; and that The Grand Fraternity might, by a suitable rider to be attached to such contracts or certificates of insurance held by the members of the United Moderns, extend to such members such additional options or privileges as the consolidated order might elect. It was further stipulated that an accounting should be taken of the funds and the affairs of each of the orders uniting, and the same, together with future receipts from their memberships, be received and equitably accounted for by The Grand Fraternity according to the respective contracts of the members, for the equitable and complete protection of the memberships of each of the orders; that the funds of neither should be confused in such manner as to interfere with the fair and equitable treatment of such memberships, the intention being strictly to continue and fully protect the interest and membership of each order, according to the plan of each, including a like accounting for the future premiums of the members according to the terms of their contracts, “equitably granting to the mem *483 bership of each of the orders hereby consolidated the' advantage accruing from such consolidation.
“That provision shall be made for the liquidation of any obligations of the United Moderns, and that the funds of the order shall be merged into the funds of the consolidated order. To give effect to the purposes hereof the funds and property of the united orders shall by proper transfer be conveyed to the consolidated order. It is further stipulated that the securities and the funds conveyed by the united orders to the consolidated order shall be of such amount and character as shall, according to the constitution and laws of the united orders ánd the contracts outstanding, fully cover the beneficiary and guarantee fund and reserve fund, according to the requirements of the beneficiary contracts outstanding, and the constitution and laws of the respective orders, the value of which has been determined and the required securities and funds to cover found intact and ready for delivery. ’ ’
After such consolidation The Grand Fraternity issued to the defendant in error and his assignor a certificate or “rider,” stating, among other things:
“The consolidated order, The Grand Fraternity, accepts you as a member and will pay all benefits provided in said beneficiary certificate, in the manner and as prescribed in the constitution, laws, rules and regulations of said United Moderns.”
On'the 17th day of April, 1903, William A. Cliff, defendant in error, and Bessie B. Cliff, his wife, became members of the United Moderns, and continued their memberships therein, and paid all dues and assessments to said United Moderns up to the time of the consolidation, and thereafter to The Grand Fraternity, under the terms and conditions of the consolidation, for a period of over five years from the date of their memberships in *484 the United Moderns. Bessie B. Cliff assigned her certificate of insurance to her husband, the defendant in error, who, on or about the 28th day of April, 1908, tendered a surrender of the two certificates then held by him to The Grand Fraternity and demanded the surrender values thereof, which amounted to $117.00 on the one issued to himself and $97.00 on the one issued to his wife or a total surrender value of $214.00. Said Grand Fraternity declined to pay this amount as demanded, and in its answer assigns as a reason for its refusal, among, other things:
“That at no time since the said 19th day of November, 1903, has there been funds in the possession of the defendant, The Grand Fraternity, received from the said United Moderns in excess of the premiums required to pay matured benefit claims which from time to time accrued and became payable upon certificates of membership issued by the said United Moderns, * * * And this defendant further says that the plaintiff is not at this time entitled to any surrender privilege whatsoever for or on account of his said certificate of membership issued as aforesaid by the said United Moderns.”
Counsel for plaintiff in error vigorously insists that, while it is stipulated and agreed that the funds and securities of the United Moderns were adequate to secure the performance of its outstanding contracts at the time of the consolidation, including those under consideration, it has not been shown that those funds and securities have been turned over to’ The Grand Fraternity.
As against this contention it has been shown that the merger of the orders was agreed upon and provided for, that an estimate or an accounting had, been made for the purpose of consolidation, and that, after the consolidation was effected, The Grand Fraternity issued to the members of the United Moderns its certificate or “rider” in which it agreed to assume the liability under *485 the contracts held by them, and we may well infer that whatever was necessary on the part of the United Moderns to consummate the contract of consolidation was done, and that its funds and securities were received by The Grand‘Fraternity accordingly.
The plaintiff in error, further complains that the court erred in refusing to admit proof of a lack of funds in its hands, received from the United Moderns and its members, to pay the surrender values of the certificates as demanded. The evidence thus offered was to the effect that The Grand Fraternity had been paying out of the consolidated funds many claims under certificates of the United Moderns, and at the time of the demand had no funds, received from the United Moderns, with which to pay surrender values. The court excluded the evidence as offered, and held that the defendant in error had a right to have his status in the consolidated order determined, and, if entitled to a judgment, the.question of lack of funds with which to pay such judgment should be no bar thereto, and that the question of proper funds could be raised and determined when such judgment was sought to be enforced. It is evident that The Grand Fraternity recognized the liability of its funds, the consolidated funds, to the payment of death losses under the certificates issued by the United Moderns, and, under the conditions of the consolidation, we cannot, see why the same fund should not be subject to the payment of surrender values.
The plaintiff in error insists that the defendant in error should have presented his claim to The Grand Fraternity, and, when payment thereof was refused, should have appealed from one authority to another until all remedies in the organization were exhausted before resorting to the courts.
The constitution and laws of the United Moderns provided for various methods for presenting claims and *486 appeals tliereon, which might consume a long period of time if pursued, 'but the United Moderns became defunct upon the consolidation of the orders, and its boards had not met for five years, and, at the time the defendant in error withdrew from the Grand Fraternity, and demanded the surrender values of the certificates held by him, the latter had no provision in its constitution and laws that required certificate holders to present their claims and exhaust all remedies within the order before commencing action on their claims in the courts. However, before applying to the courts, the defendant in error requested settlement of his claims from the president of The Grand Fraternity, and served written' notice of his demands upon The Grand Fraternity, but payment of his demands was refused and liability denied for the same reasons, presumably, as were set up in the pleadings of the plaintiff in error, and as was urged by it upon the trial; and it is evident that an exhaustion of the remedies by appeal in this case would have proven fruitless in the light of the history of the conduct of The Grand Fraternity.
There is a very small sum involved herein, and each party hereto has probably expended as much in litigation of the matter as the amount involved, and we think that substantial justice was awarded by the trial court.
The Grand Fraternity does not deny its ultimate obligation to pay the claims herein demanded, but seeks to avoid payment out of the consolidated funds and to limit the payment of surrender values to the direct results of the funds and resources received by it from the United Moderns and its members. It does not contend that it did not have available consolidated funds that might have been applied in the liquidation of these surrender values. We do not think that the defendant in error understood that the agreement of consolidation limited the payment of surrender values only to funds received from the United Moderns, or should have so understood, at the *487 time he consented to look to The Grand Fraternity for the payment of those values and while he was paying to it dues and assessments for a period of almost five years.
The stipulations of the consolidation show that The Grand Fraternity was to accept all new members in its own name for the benefit of the consolidated orders; that it had examined the funds and resources of the United Moderns, and that such were sufficient to pay all claims' which might arise under certificates issued by said United Moderns, and that these funds should be merged into the funds of the consolidated order; and, while the consolidated order agreed to preserve these funds as a security for the payment of matured benefit claims arising under the certificates issued by the United Moderns, it also agreed to assume the responsibility for the payment of surrender values becoming due and payable under such certificates. There is no indication in the stipulations of consolidation that The Grand Fraternity should be a mere trustee to liquidate the claims and apply the funds received by it from the United Moderns to such claims arising under the certificates issued by the United Moderns and outstanding at the time of the consolidation.
We think, from the nature of the consolidation, and the conduct of The Grand Fraternity, that the judgment of the trial court should be, and is hereby, affirmed with costs.

Affirmed.